**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SUNG BUM CHANG, ID # 33473-177,** | ) | |
| **Movant,** | ) | |
| **vs.** | ) | **No. 3:08-CV-1963-L-BH** |
| | ) | **No. 3:05-CR-0127-L (01)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this action has been referred for findings, conclusions, and recommendation.

**I.  BACKGROUND**

Sung Bum Chang ("Movant"), an inmate currently incarcerated in the federal prison system, filed a *Motion to Vacate, Set Aside, or Correct Sentence* ("Mot.") pursuant to 28 U.S.C. § 2255 to challenge his federal conviction and sentence in Cause No. 3:05-CR-0127-L.  The respondent is the United States of America ("Government").

**A.    Plea and Sentencing**

On September 21, 2005, Movant was charged by a superseding indictment with conspiracy to provide or obtain forced labor in violation of 18 U.S.C. § 371; providing and obtaining and attempting to provide or obtain forced labor in violation of 18 U.S.C. §§ 1589, 1594(a); conspiracy to conceal, harbor and shield illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I); and harboring illegal aliens for commercial advantage and private financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (a)(1)(B).  (*See* Superseding Indictment, doc. 12).[1]

On May 17, 2006, he signed a plea agreement pleading guilty to conspiracy to provide or

---

[1]    All document numbers refer to the docket number assigned in the underlying criminal action.

obtain forced labor (Count 1) and providing and obtaining and attempting to provide or obtain forced labor (Count 3). (*See* Plea Agreement, doc. 61). The plea agreement specifically acknowledged that the maximum penalty that Movant could receive for Count 1 was 5 years and 20 years for Count 3. (*Id*. at 2). It states Movant's understanding that the actual sentence to be imposed was solely within the discretion of the court, so long as it was within the statutory maximum, and that no one could predict with certainty the outcome of the court's consideration of the sentencing guidelines. (*Id*. at 3). The agreement also stated that it was "not the result of force or threats, or of promises apart from those set forth in this plea agreement." (*Id.* at 6). Movant also signed a factual resume admitting facts sufficient to support his plea. (*See* Factual Resume, doc. 62).

Movant appeared for rearraignment on June 12, 2006. (*See* Tr. Rearraignment). The Court placed the translator under oath to translate the proceedings for Movant, and then placed Movant under oath. (*Id.* at 3-4.) The Court questioned Movant about the voluntariness of his plea and the factual basis for it. Movant averred that (1) no-one had made any promises or predictions regarding any potential sentence; (2) he understood that the district judge was required to consider the United States Sentencing Guidelines in reaching a decision on a sentence, although they were not binding on the court; (3) while he had discussed how the guidelines might apply in his case with his attorney and his attorney had offered an opinion about how the guideline range might apply, his attorney could not guarantee or promise him that the opinion was correct; (4) neither the court nor his attorney could determine the appropriate guideline until after a pre-sentence report had been completed and objections had been made to it, and no-one, including his attorney, could predict in advance what his sentence would be; (5) he could not withdraw his plea if the sentence he received was more severe than he expected; and (6) the statutory maximum sentence for Count 1 was five

years and was twenty years for Count 3.  (*Id.* at 14-22).  Movant admitted each essential element of the charged offenses and stated that he had an opportunity to read the plea agreement and discuss it with his attorney, that he understood the terms and conditions of the plea agreement, and that the document completely stated his agreement with the Government.  (*Id.* at 10-11).  He further stated that he had read the factual resume, and that the facts stated therein were true.  (*Id.* at 24-25). Finding Movant's guilty plea to be knowing and voluntary, the Court accepted it and adjudged him guilty of the offenses charged in Counts 1 and 3 of the superseding indictment.  (*Id.* at 25-26).

After a sentencing hearing on October 18, 2006, the district court entered judgment on Movant's guilty plea and sentenced him to five years of imprisonment on Count 1 and 120 months on Count 3, to be served concurrently.  (*See* Amended Judgment, doc. 84).  Movant appealed his sentence on grounds that the district court had erred by applying two sentencing enhancements.  The Fifth Circuit affirmed his conviction and sentence on August 7, 2007. *United States v. Chang*, 237 Fed. Appx. 985 (5th Cir. 2007).

## B.    Substantive Claims

Movant filed his motion to vacate on or about November 4, 2008, (*see* Mot. at 1), along with a memorandum in support of his motion. ("Mem.").  He asserts three claims:

> (1)    his guilty plea was involuntary because his attorneys promised him that he would received a lesser sentence;
>
> (2)    his trial attorneys provided ineffective assistance of counsel by failing to investigate and call certain witnesses at the punishment hearing; and
>
> (3)    his appellate counsel provided ineffective assistance of counsel by failing to raise certain grounds on appeal.

(*See* Mot. at 4-5; Mem. at 8-10, 12-15).  The Government filed a response brief and attached the affidavit of Movant's trial counsel.  (*See* Resp. Opp'n Mot. ("Resp.")).

3

Movant filed a reply brief and attached original affidavits by Grace Carter and Sung Ho Chang in Korean.  Attached to the affidavits are English translations signed by an unknown third party.  The translation of Grace Carter's affidavit states that she was hired as a Korean translator by Movant's attorney, and that the attorney repeatedly stated during one meeting with Movant that the maximum incarceration he would receive under the plea agreement was five years.  (Reply, Attachment A).  Sung Ho Chang is Movant's brother.  The translation of his affidavit states that he was at a meeting with Movant and counsel the day before the sentencing hearing, and Movant asked counsel why he was mentioning a sentence longer than five years for the first time at that late date. (Reply, Attachment C).

## C.   <u>Evidentiary Hearing</u>

An evidentiary hearing was held on November 4, 2009, during which Movant, Ms. Carter, Mr. Chang, and trial counsel testified.

Movant testified through an interpreter that he had a meeting with his attorney shortly before he signed his plea agreement, and that counsel promised him that he could receive no higher than a five-year sentence under the plea agreement.  Movant asked the interpreter at that meeting, Ms. Carter, whether the sentence would be five years, and she confirmed that it would not be longer than five years.  When questioned about the plea agreement at the rearraignment hearing, Movant did not understand what the judge told him, and he only answered "yes" to the questions asked of him because he was advised to do so by his attorney.  The plea agreement was not translated into Korean for him line by line, and there was no interpreter present when his attorney explained the sentence enhancements or the pre-sentence report.  The attorney did not explain the possible sentence enhancements to him until shortly before the sentencing hearing.

Grace Carter testified that the English translation of the affidavit she signed differed in meaning from the Korean affidavit she signed.  She was hired to be an interpreter in May of 2006 for several meetings between counsel and Movant, but she has no special training as an interpreter. While she was surprised when she heard that Movant had been sentenced to more than five years imprisonment, she never heard counsel promise Movant that he would receive a five-year sentence. Both a five-year and a ten-year sentence were discussed during the meetings.

Sung Ho Chang testified that he did not read the affidavit before he signed it.  There was no translator at the pre-sentencing meeting he attended, but they were told that Movant would get a deal for five years if he pled guilty.

Trial counsel testified that Movant was understandably concerned with the potential range of sentence he might receive and that he met with Movant seven to nine times to discuss potential sentence enhancements and how they might apply.  Counsel never promised Movant that he would receive a five-year sentence; he told Movant that he could not guarantee a sentence.  If Movant pled guilty pursuant to the plea agreement, a five-year sentence was the best possible scenario if Movant won all of the enhancement issues at the sentencing hearing.  Counsel went over the plea agreement with Movant verbatim with an interpreter, but Movant chose not to have a written Korean translation of the agreement completed (probably because of the additional cost).  Although Movant spoke English when he called or stopped by counsel's office, a Korean interpreter was always present during each of the seven to nine formal meetings he had with Movant.  It was not always Grace Carter.  Counsel explained in detail to Movant the sentence ranges, the four or five enhancements that the government was seeking, and what the defense would probably need to disprove at sentencing in order to lower the sentence range.  Counsel denied that he told Movant to answer

"yes" to each question posed to him by the court at the rearraignment hearing.

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).  Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error.  *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments."  *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  The Government may also waive the procedural bar defense.  *Willis*, 273 F.3d at 597.  In this case, the Government does not invoke procedural bar as a defense to any claim.

## III.  VOLUNTARINESS OF PLEA

In his first ground for relief, Movant alleges that he was his guilty plea was unlawfully induced and without understanding of the consequences of the plea because his trial attorney

guaranteed that he would receive no longer than a five-year sentence if he pled guilty.  (Mot. at 5).

A plea of guilty waives a number of constitutional rights.  *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences."  *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748).  A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary.  *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process."  *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect."  *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made."  *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000).  Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly.  It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well

as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

8

In addition, inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

"Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (quoting *United States v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979) (per curiam)). Such refutations may be heard on collateral review, however, when the movant "offers specific factual allegations supported by the affidavit of a reliable third person". *Id.* In other words, when a § 2255 movant makes allegations which conflict with his sworn testimony at his plea hearing, he must provide an "independent indicia of the likely merit of [the] allegations, typically in the form of one or more affidavits from reliable third parties." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). A movant's own affidavit does not suffice. *United States v. Mackay*, Nos. 3:04-CV-0413-D, 3:97-CR-0208-T(01), 2007 WL 700895, at *26 (N.D. Tex. Mar. 6, 2007) (accepting recommendation of Mag. J.), *aff'd*, No. 07-10477, 2009 WL 1971627 (5th Cir. July 9, 2009) and *cert. filed*, No. 09-7046 (Oct. 8, 2009).

The evidence in this case does not support Movant's contention that his guilty plea was

involuntary because he was promised a particular sentence.  The interpreter, a neutral third-party witness, testified that the translation of her affidavit differed from the original one she signed, that counsel did not promise a five-year sentence during the meetings she interpreted, and that higher sentences were discussed.  Counsel also testified unequivocally at the evidentiary hearing that he never promised Movant a particular sentence, but instead informed him that no sentence could be guaranteed.  He also testified that he spent a great deal of time with Movant, and that with the aid of various Korean interpreters, he went through the plea agreement with Movant in detail and explained the possible sentences that Movant could receive, depending on which and how many sentence enhancements were added.  This testimony is consistent with the information contained in the plea agreement that Movant signed as well as the testimony he gave at the rearraignment hearing.

Although Movant claims that he did not understand what occurred at the rearraignment hearing and only answered "yes" to every question asked by the district judge because his attorney advised him to do that, the transcript from the hearing reveals that Movant did not answer "yes" to every question posed by the district court.  He answered "no" when it was appropriate to do so (Tr. Rearraignment at 6, 9, 11, 17), he answered some questions with complete sentences (*Id*. at 9, 10, 11, 17), and he asked questions of the judge through the interpreter at times in order to clarify his understanding of certain questions (*Id*. at 7, 8,18).  Indeed, when Movant was asked by the judge how far he had gone in school, movant responded that he had had "some college."  (*Id*. at 6). Movant's testimony that he did not understand what was said to him at the hearing at which he pled guilty was not credible.  Nor was his testimony regarding the promises allegedly made by counsel. While Movant's brother gave some testimony at the hearing that supported Movant's claim, it was also not completely consistent with his affidavit.

Based on the demeanor of the witnesses, their respective roles, any apparent bias, consistencies in testimony, explanations for inconsistencies, and corroborating evidence, the Court finds that neither Movant's testimony nor the testimony of the witnesses called on his behalf is sufficient to overcome the veracity of his prior testimony at the rearraignment hearing and the presumption of regularity accorded the plea agreement that he signed. The Court finds that Movant was not coerced to plead guilty, and that he had a realistic understanding of the consequences of a guilty plea . Accordingly, his guilty plea was voluntary, and this ground for relief should be denied.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his second and third grounds for relief, Movant asserts that his trial and appellate attorneys provided ineffective assistance of counsel. In particular, Movant contends that his trial attorney was ineffective for failing to investigate and present certain witnesses at the punishment hearing. (Mem. at 8). Movant further contends that his appellate attorney was ineffective for failing to raise additional claims on direct appeal and for failing to file a petition for writ of certiorari. (Mot. at 4, 5A).

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* test applies when a prisoner alleges denial of effective

assistance of counsel in the context of a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).

A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).  To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.  One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.  *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).  Likewise, conclusory allegations are insufficient to obtain relief under § 2255.  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

## A.  Ineffective Assistance of Trial Counsel

Movant asserts that his trial attorney was ineffective for failing to investigate and call certain witnesses at the sentencing hearing.  He contends that he provided his attorney with the names of thirteen people that he believed should have been interviewed and called as witnesses at sentencing, and that three of them (Myung Chan Chea, Doe Jong Oh, and Jong Wan Lee) would have provided helpful testimony.  (Mem., Ex. A).  Movant submitted affidavits from Chi Yung Kim and Jong Wan

Lee, who could have testified that Movant never benefitted from the fines assessed against the women who worked at his club, and that the money was instead used by employees for dining out and leisure activities, that the women never worked more than 40 hours a week at his club, that the women did not perform any work at Movant's home, and that Movant neither directly or indirectly encouraged the women to engage in any sexual activity with the customers. (Reply, Attachment D). He further asserts that Chi Yung Kim should have given more extensive testimony at the sentencing hearing. (Reply at 7-9, Attachment D).

A movant 'must allege with specificity what the investigation would have revealed and how it would have altered the outcome' of the proceeding." *Potts v. United States*, 566 F. Supp. 2d 525, 537 (N.D. Tex. 2008) (accepting recommendation of Mag. J.) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Movant provides no specificity regarding the potential testimony of eleven of the witnesses and how this testimony would have altered the outcome in his case. Moreover, at the evidentiary hearing, trial counsel testified that Movant provided him a list of potential witnesses before he entered into the plea agreement, that his investigator spoke to all of the people, and the attorneys conducted follow-up interviews with the assistance of an interpreter. Counsel further testified that he made the strategic decision regarding what witnesses to call at the sentencing hearing. Movant has not shown that counsel was deficient or that he was prejudiced by any alleged failure to contact and interview witnesses other than Ms. Kim and Mr. Lee.

With regard to these two witnesses, Movant has also failed to establish deficiency or prejudice. Movant has not shown that the proffered testimony from Ms. Kim or Mr. Lee would have affected the outcome of the sentencing. At issue during sentencing were potential sentence enhancement for brandishing a gun, being the leader or organizer of criminal activity, and vulnerable

victims, but much of the evidence focused on the vulnerable victim enhancement.  Chi Yung Kim testified that she worked at Movant's home for six to nine months and at his club for a year, and that she prepared meals and did laundry.  (Tr. Sentencing Vol. II, pp. 146-47).  She gave no further testimony for fear she might incriminate herself, but the parties stipulated that she would have testified that the women who worked for Movant and lived at his home had certain restrictions but also freedoms and were not completely imprisoned.  (*Id.* at 156-57).  Kwon Kang testified that he was a taxi driver, that one to three times a day he picked up the women who worked for Movant and lived at his home, that he would take them to and from work, shopping at a mall, or to restaurants, and that all of the women had cell phones.  (*Id.* at 155-67).  Through cross-examination of government witness Special Agent David Popp, trial counsel established that the women who worked for Movant at his club as hostesses were in their late twenties and early thirties; they made the decision themselves to come to the United States illegally; all agreed to repay money they had borrowed to finance their trip to the United States; their journey from South Korea to Texas was comfortable; no mistreatment occurred; the women worked as hostesses at Movant's upscale club; and the women only served drinks and provided companionship to Korean businessmen who visited the club.  (*Id.* at 110-14, 119-21).  Popp also testified on cross-examination that the women were paid $8 an hour towards the debt for smuggling them to Dallas, they were permitted to keep any additional cash tips they received, they used the swimming pool at Movant's house, they could go where they liked during the day but had to get permission from Movant or his wife if they wanted to go out with boyfriends at night, and they had cell phones. (*Id.* at 121-26).

Movant has not shown that the court would have determined that the victims were not vulnerable based on testimony from Ms. Kim and Mr. Lee that the women did no housework at his

home and did not work more than forty hours a week at the club, and that Movant never personally benefitted from fines levied against the women for various alleged infractions or encouraged them to engage in sexual activity with the customers.  Nor has he shown it would have been relevant to the other sentence enhancement he received for being a leader or organizer.[2]  Defense counsel provided effective assistance of counsel that resulted in a two-level reduction of the recommended guideline.  He made strategic decisions regarding what witnesses to call based on whether their testimony would be helpful, and Movant has failed to show either that these strategic choices were unreasonable or that there is a reasonable probability that his sentence would have been lower had additional witnesses been called.  Movant's claim that his trial counsel was ineffective is without merit.

## B.  Ineffective Assistance of Appellate Counsel

In his third ground for relief, Movant asserts that his appellate counsel was ineffective for failing to appeal the involuntariness of his plea and the unreasonableness of his sentence and failing to file a petition for certiorari with the Supreme Court.  (Mem. at 14).

On direct appeal, appellate counsel challenged the addition of the leader/organizer enhancement and the vulnerable victim enhancement.  *See Chang*, 237 Fed. Appx. at 987.  Movant's plea agreement waives all claims on direct appeal except for claims regarding any increase in the base offense levels used to determine Movant's sentence, a sentence exceeding the statutory maximum punishment, or an arithmetic error at sentencing.  Under the agreement, Movant also reserved the right to challenge the voluntariness of his plea and to bring claims of ineffective assistance of counsel.  (*See* Plea Agreement at 6).  Because Movant's sentence did not exceed the

_____

[2]  The defense was successful in its objection to the enhancement that movant had brandished a gun.  (Tr. Sentencing Hearing, Vol. II, p. 99).

statutory maximum punishment and Movant has neither alleged nor shown an arithmetic error at sentencing, appellate counsel raised the claim that was permitted under the plea agreement–that the district court erred in increasing the base offense level with the addition of two enhancements.

Moreover, while Movant contends that his appellate counsel was ineffective for failing to allege that his plea was an involuntary one, this Court has considered this claim and determined it to be without merit.  Movant has therefore shown no prejudice because counsel did not raise this claim on direct appeal. Movant's assertion that his appellate attorney was ineffective for failing to argue that his sentence was not reasonable is similarly without merit.  Movant's sentence of 120 months was within the guideline range of 97-121 months. *See Chang*, 237 Fed. Appx. at 987.  A sentence within a properly calculated guideline range is presumptively reasonable, *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005), and Movant has not overcome this presumption.  Finally, with regard to Movant's assertion that appellate counsel was ineffective for failing to file a petition for certiorari, Movant has failed to show that the Fifth Circuit erred in its analysis such that there is a reasonable probability that Movant's sentence would have been reversed or reduced had such a petition been filed.  Movant has therefore failed to establish that his appellate counsel provided ineffective assistance of counsel.

Movant's ineffective assistance claims entitle him to no relief and should be denied.

## V.  RECOMMENDATION

The *Motion to Vacate, Set Aside, or Correct Sentence* pursuant to 28 U.S.C. § 2255 should be **DENIED** with prejudice.

16

**SIGNED this 30th day of December, 2009.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

17